# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Rieth-Riley Construction Co., Inc.,

                Plaintiff,

v.

Operating Engineers' Local 324
Fringe Benefit Funds Trustees, et
al.,

                Defendants.

Case No. 24-13124

Judith E. Levy
United States District Judge

Mag. Judge Curtis Ivy, Jr.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [23], DENYING PLAINTIFF RIETH-RILEY CONSTRUCTION CO., INC.'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [38], GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [46], AND DENYING PLAINTIFFS SCOTT D. MEADE, MICHAEL J. COURTNEY, AND DANIEL RANGER'S <u>MOTION FOR PRELIMINARY INJUNCTION [48]</u>

Before the Court are Defendants' Motion to Dismiss ("Motion to

Dismiss Rieth-Riley's Lawsuit"), (ECF No. 23), and Plaintiff Rieth-Riley

Construction Co., Inc.'s Motion for Leave to File First Amended

Complaint ("Motion to Amend Rieth-Riley's Lawsuit"), (ECF No. 38), in

*Rieth-Riley Construction Co., Inc. v. Operating Engineers' Local 324*

*Fringe Benefit Funds Trustees, et al.* ("Rieth-Riley's Lawsuit"). Also before the Court are Defendants' Motion to Dismiss First Amended Complaint ("Motion to Dismiss the Employees' Lawsuit"), (ECF No. 46), and Plaintiffs Scott D. Meade, Michael J. Courtney, and Daniel Ranger's Motion for Preliminary Injunction ("the Employees' Motion for a Preliminary Injunction"), (ECF No. 48), in *Meade, et al. v. Operating Engineers' Local 324 Health Care Plan, et al.* ("the Employees' Lawsuit).[1] For the reasons set forth below, the Court grants the Motion to Dismiss Rieth-Riley's Lawsuit, (ECF No. 23), denies the Motion to Amend Rieth-Riley's Lawsuit, (ECF No. 38), grants the Motion to Dismiss the Employees' Lawsuit, (ECF No. 46), and denies the Employees' Motion for a Preliminary Injunction. (ECF No. 48.)

## I.    Background

Rieth-Riley and the Employees' Lawsuits are part of a long, complicated, and contentious relationship between the parties. This encompasses battles between a variety of parties on multiple fronts. It stretches back to 2018 and it includes trips to federal district court, the

---

[1] These motions, which were filed in the Employees' Lawsuit, were re-filed on the docket for Rieth-Riley's Lawsuit pursuant to the Court's order consolidating these two cases. (ECF No. 43.)

Sixth Circuit Court of Appeals, and the National Labor Relations Board ("NLRB").[2]

Rieth-Riley Construction Company, Inc. ("Rieth-Riley"), which is an Indiana corporation with its principal place of business in Goshen, Indiana, performs road construction work in Michigan. (ECF No. 1, PageID.5.) It employs unionized operating engineers who are represented by the Operating Engineers' Local 324 ("Local 324"). (*Id.*) Operating Engineers' Local 324 Health Care Plan, Operating Engineers' Local 324 Pension Plan, Operating Engineers' Local 324 Defined Contribution Plan, Operating Engineers' Local 324 Vacation And Holiday Fund, Operating Engineers' Local 324 Journeyman & Apprentice Training Fund, and Operating Engineers' Local 324 Retiree Benefit Fund (collectively the "Fringe Funds") are "independent multiemployer fringe benefit funds, established pursuant to individual

---

[2] Several—but not all—of the cases in federal court are described below. Examples of NLRB adjudications appear throughout the briefing. (*See, e.g.*, ECF No. 38, PageID.1015 (referencing a recent charge brought in the NLRB against Rieth-Riley by Operating Engineers' Local 324); ECF No. 47, PageID.1781 (discussing earlier NLRB decisions related to conflicts between Rieth-Riley and Operating Engineers' Local 324).). The Court only addresses these separate adjudications as necessary and does not attempt to summarize the entirety of this sprawling conflict.

Trust Agreements, to provide benefits to employees," (ECF No. 23, PageID.748), which are administered in Oakland County, Michigan. (ECF No. 1, PageID.5–6.) The Fringe Funds fall under "the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") and the Taft Hartley Act, 29 U.S.C. § 186, LMRA § 302, *et seq.*" (ECF No. 23, PageID.749.) The Fringe Funds' trustees (the "Trustees") are jointly appointed in equal numbers by employers and the union. (*Id.*)

At some point before 2013, Rieth-Riley joined a multi-employer trade group called the Michigan Infrastructure and Transportation Association ("MITA") and granted it power of attorney to negotiate on its behalf with Local 324. (ECF No. 1, PageID.6) In 2013, MITA entered into a collective-bargaining agreement ("CBA") with Local 324, which is referred to as "the Road Agreement." (*Id.* at PageID.7.) Rieth-Riley was a party to the Road Agreement, which required it "to make specified contributions to the Fringe Funds and to cooperate with the terms of the Fringe Funds' trust agreements." (*Id.*) The Road Agreement was

4

terminated in 2018 and negotiations to form a new CBA broke down.[3] (*Id.*)

Under the National Labor Relations Act ("NLRA"), some bargaining relationships require good faith negotiation and maintenance of the status quo of a predecessor CBA after a contract expires. Such bargaining relationships exist under Section 9(a) of the NLRA, 29 U.S.C. § 159(a), which "obligates the parties [to a CBA] to maintain the status quo— including continuing fund contributions—and to bargain in good faith [after a CBA expires]." *Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co., Inc.*, No. 23-1699, 2024 WL 2852006, at *1 (6th Cir. June 5, 2024) ("*Rieth-Riley II*"). Not all bargaining relationships work that way, however. Some CBAs in the building and construction industry fall under Section 8(f) of the NLRA. 29 U.S.C. § 158(f). "Section 8(f) does not obligate employers and unions to bargain for a new agreement or maintain the 'status quo' during negotiations." *Rieth-Riley II*, 2024 WL 2852006, at *1.

---

[3] Rieth-Riley and Local 324 have not yet negotiated a new CBA. (*Id.* at PageID.10.)

Initially, Rieth-Riley and Local 324 thought their CBA had been under Section 8(f), but they eventually determined that Section 9(a) applied, meaning Rieth-Riley was obliged to maintain the status quo and continue contributing to the Fringe Funds while a new CBA was negotiated. (ECF No. 1, PageID.9.) After the termination of the Road Agreement, when Rieth-Riley and Local 324 believed their relationship was governed by Section 8(f), the Fringe Funds rejected Rieth-Riley's contributions, stating "there is no legal basis for accepting contributions without a written agreement between [Rieth-Riley] and [] Local 324." (*See, e.g.*, ECF No. 1-6, PageID.78.) Once Rieth-Riley and Local 324 realized that Section 9(a) applied, the Fringe Funds "began accepting Rieth-Riley's post-expiration contributions, retroactive to the June 1 expiration of the Road Agreement." (ECF No. 1, PageID.10.)

In October 2019, the Fringe Funds requested an audit of Rieth-Riley's payroll, and Rieth-Riley responded by producing some but not all the requested records. (*Id.*) The Fringe Funds sued Rieth-Riley under ERISA and the Labor Management Relations Act ("LMRA"), seeking an

6

audit of Rieth-Riley's records.[4] That case led to two appeals to the Sixth Circuit.

One appeal involved the district court's dismissal of the case for lack of subject matter jurisdiction. *Operating Eng'rs' Loc. 324 Fringe Benefit Funds v. Rieth-Riley Constr. Co.*, 43 F.4th 617 (6th Cir. 2022) ("*Rieth-Riley I*"). The Sixth Circuit reversed the district court's holding that the NLRB had exclusive jurisdiction over the Fringe Funds' claims, because they were based on statutory obligations from the NLRA rather than being contract claims. *Id.* at 620–23. The Sixth Circuit held that "the presence of a live contract" is a merits question, not a "jurisdictional prerequisite." *Id.* at 618–19. The Sixth Circuit explained that "[a]s long as a plaintiff asserts an ERISA cause of action—and doesn't ask a federal district court to find an employer violated the NRLA—the court has jurisdiction to hear the case." *Id.* at 622–23. In that earlier litigation, the

---

[4] In August 2018, a Rieth-Riley employee also filed a lawsuit, *Furwa v. Operating Engineers' Local 324 Health Care Plan*, ("*Furwa*"), which was a putative class action alleging that Operating Engineers' Local 324 Health Care Plan was refusing to accept contributions from employers like Rieth-Riley that had granted MITA power of attorney. (Case No. 18-cv-12392, ECF No. 1, PageID.4, 12.) At the time that lawsuit was filed, Local 324 and Rieth-Riley believed their relationship fell under Section 8(f) of the NLRA. (*Id.* at PageID.6.) That case was ultimately dismissed after the parties reached a settlement. (Case No. 18-cv-12392, ECF No. 61.)

Fringe Funds' complaint did not refer to statutory obligations under the NLRA and did not allege violations of the NLRA. Instead, it cited obligations under the expired CBA as the basis for its claims. (Case No. 20-cv-10323, ECF No. 12, PageID.63–66.) The Fringe Funds contended that terms of CBA remained in force, because:

> [Reith-Reilly] acted as if the expired collective bargaining agreement continued in effect by demonstrating an intent to abide by and continue to be bound by the agreement and engaging in a course of conduct that constituted adoption of the expired collective bargaining agreement through compliance with its explicit terms, while electing to receive the benefit of employees continuing to work for Defendant on its road construction projects in Michigan under the collective bargaining agreement and the Trust Agreements of the Funds.

(*Id.* at PageID.66.)

Rieth-Riley ultimately prevailed at summary judgment. That was because the Fringe Funds were seeking an audit of records from after the CBA expired, which requires "evidence of an existing contract that obligates Rieth-Riley to make contributions to the Funds." *Rieth-Riley II*, 2024 WL 2852006, at *1, *3. Although the Fringe Funds pled that such a contract existed and did not base their claims on any alleged NLRA violations—thus avoiding dismissal due to lack of jurisdiction—they

8

failed to produce evidence of such a contract at summary judgment and their case was dismissed. *Id.* at *3.

The Fringe Funds accepted Rieth-Riley's contributions until September 9, 2024 when the Fringe Funds sent Rieth-Riley a letter stating that they would not continue accepting contributions unless Rieth-Riley provided written confirmation that it would "comply with and be bound by the [Fringe] Funds' trust agreements, plan documents, policies and procedures enforceable under ERISA and federal law." (ECF No. 1-2, PageID.25.) The statement the Fringe Funds wanted Rieth-Riley to sign involved agreeing to be bound by the Fringe Funds' "audit and collection procedures and enforcement of the same under ERISA and federal law." (*Id.*) The letter gave Rieth-Riley until September 30, 2024 to sign, stating that if they did not do so, the Fringe Funds would reject its contributions for work performed "on or after" October 1, 2024. (*Id.*)

Rieth-Riley wrote back and refused to sign the agreement, asserting that it, as well as the Fringe Funds, were bound by the NLRA to maintain the status quo terms of the expired CBA. (ECF No. 1-7, PageID.83.) The Fringe Funds responded in writing that Rieth-Riley was bound by the expired CBA, but the Fringe Funds were not and that they

would not accept Plaintiff's contributions if Rieth-Riley refused to execute the agreement they had provided. (ECF No. 1-8, PageID.85.)

The Fringe Funds subsequently began to return Rieth-Riley's contributions. (ECF No. 1, PageID.14.) In response, Rieth-Riley placed the rejected contributions into escrow accounts with a commercial bank "until the Fringe Funds agree or are ordered to accept them." (*Id.* at PageID.16.) It argues that this arrangement has forced it to take on fiduciary status under ERISA, which led it to file this lawsuit.

Rieth-Riley alleges that the Fringe Funds breached their fiduciary duties under ERISA by rejecting Rieth-Riley's contributions. (*Id.* at PageID.16–18.) In setting forth that claim, it asserts that the NLRA requires it to continue making contributions to the Fringe Funds and also requires the Fringe Funds to accept those contributions. (ECF No. 1, PageID.17 ("The Trustees are required by the NLRA to continue accepting Rieth-Riley's contributions to the Fringe Funds for work covered under the status quo of the terms and conditions of the expired Road Agreement while Rieth-Riley and Local 324 continue to negotiate for a successor CBA.").)

Rieth-Riley asks the Court for declaratory relief, injunctive relief (both preliminary and permanent), whatever equitable relief the Court deems appropriate (including removal of the trustees of the Fringe Funds as fiduciaries), and attorney fees under 29 U.S.C. § 1132(g)(1). (*Id.* at PageID.19–20.) Specifically, it asks the Court to declare that the Fringe Funds have breached their duties and enjoin them by requiring them to accept contributions from Rieth-Riley and requiring them to provide benefits to its employees. (*Id.*)

The Fringe Funds filed a motion to dismiss. (ECF No. 23.) It is fully briefed. (ECF Nos. 25, 26.) Rieth-Riley's motion for a preliminary injunction, (ECF No. 4), is also fully briefed. (ECF Nos. 28, 29.)

The Court heard oral argument on the motion to dismiss and the motion for a preliminary injunction in Rieth-Riley's Lawsuit. It took the motion to dismiss under advisement and denied the motion for a preliminary injunction. (ECF No. 33.) The Court then granted Rieth-Riley permission to file a supplemental brief, to which the Fringe Funds responded. (ECF Nos. 35, 37.)

Subsequently, on March 24, 2025, Rieth-Riley filed a motion for leave to file a first amended complaint in Rieth-Riley's Lawsuit. (ECF No.

11

38.) The Fringe Funds responded to oppose the motion, (ECF No. 40), and Rieth-Riley replied. (ECF No. 41.)

On March 17, 2024, just prior to Rieth-Riley's motion to amend its original complaint, the Employees' Lawsuit was filed. (Case No. 25-cv-10749, ECF No. 1.) The Employees also filed a motion for a preliminary injunction, which is fully briefed. (ECF Nos. 48, 50.) They amended their complaint, (Case No. 25-cv-10749, ECF No. 44), after which the case was reassigned to the undersigned. (Case No. 25-cv-10749, ECF No. 49.) The Employees' Lawsuit revolves around the same set of facts alleged in Rieth-Riley's Lawsuit, but it is brought by three Rieth-Riley employees who assert the Fringe Funds' actions threaten their access to benefits to which they are entitled.[5] (Case No. 25-cv-10749, ECF No. 44, PageID.824.) The Fringe Funds filed a motion to dismiss the Employees'

---

[5] The Employees' Lawsuit does not name Operating Engineers' Local 324 Retiree Benefit Fund as a Defendant, but it individually names Trustees of the Fringe Funds as Defendants. (Case No. 25-cv-10749, ECF No. 44, PageID.798–799.) While worth noting, this distinction does not impact the Court's analysis in this Opinion, so it will simply refer to "the Fringe Funds" and "the Trustees," for the sake of convenience. Further, when the Court refers to "the Fringe Funds" in the context of Rieth-Riley and the Employees' Lawsuits, it includes the Trustees unless otherwise specified.

Lawsuit, which is fully briefed, including a sur-reply. (ECF Nos. 46, 47, 49.)

On June 30, 2025, the Court consolidated Rieth-Riley's Lawsuit and the Employees' Lawsuit. (ECF No. 43.) It administratively closed the docket for the Employees' Lawsuit, (Case No. 25-cv-10749), and required all pending motions and future filings from that case be filed on the docket for Rieth-Riley's Lawsuit (Case No. 24-cv-13124). (*Id.* at PageID.1739.)

## II.    Motion to Dismiss Rieth-Riley's Lawsuit

The Fringe Funds seeks dismissal of Rieth-Riley's Lawsuit based on lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). They argue that Rieth-Riley lacks standing under ERISA and that the NLRB has exclusive jurisdiction over Rieth-Riley's claims. (ECF No. 23, PageID.746–747.)

### A.    Legal Standard

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).

A facial attack "questions [] the sufficiency of the pleading." *Rote v. Zel Custom Mfg. LLC*, 816 F.3d 383, 387 (6th Cir. 2016). "When reviewing a facial attack, a district court takes the allegations in the complaint as true." *Glob. Tech., Inc. v. Yubei (XinXiang) Power Steering Sys. Co.*, 807 F.3d 806, 810 (6th Cir. 2015) (quoting *Gentek*, 491 F.3d at 330).

"If those allegations establish federal claims, jurisdiction exists." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009). But "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Rote*, 816 F.3d at 387 (quoting *O'Bryan*, 556 F.3d at 376). "This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)." *Glob. Tech., Inc.*, 807 F.3d at 810. When a court's subject-matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden to prove jurisdiction. *Id.* ("[T]he party invoking federal jurisdiction has the burden to prove that jurisdiction.").

### B.    The Garmon Doctrine

The Fringe Funds argue that Rieth-Riley's "claims are preempted under the Garmon doctrine because they are rooted in claims that the

14

Fund violated the NLRA." (ECF No. 23, PageID.768 (emphasis omitted).) The Court agrees, so it does not address the Fringe Funds' other arguments for dismissal.

### i.   Legal Standard

Under the *Garmon* doctrine, "When an activity is arguably subject to [Section] 7 or [Section] 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). To determine if a case is preempted under *Garmon*, courts must ask "whether the conduct at issue was arguably protected or prohibited by the NLRA." *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 394 (1986).

The *Garmon* doctrine is not "rigidly applied" and "the decision to pre-empt federal and state court jurisdiction over a given class of cases must depend upon the nature of the particular interests being asserted and the effect upon the administration of national labor policies of concurrent judicial and administrative remedies." *Vaca v. Sipes*, 386 U.S. 171, 179–80 (1967). The main reason for the *Garmon* doctrine is "the need

to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose," i.e. the NLRB. *Id.* at 180–81.

The Supreme Court has stated that "where there is an independent federal remedy that is consistent with the NLRA, the parties may have a choice of federal remedies." *Connell Constr. Co. v. Plumbers & Steamfitters Loc. Union No. 100*, 421 U.S. 616, 635 n.17 (1975). The Sixth Circuit interprets this exception to mean that

> federal district courts may enforce congressional remedies created by a different federal statute so long as the statute does not conflict with §§ 7 or 8 of the NLRA and so long as litigants do not "circumvent the primary jurisdiction of the NLRB simply by casting statutory claims [under §§ 7 or 8 of the NLRA] as violations of [an independent federal law]." *Beck,* 487 U.S. at 743–44.

*Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 610 (6th Cir. 2004) (alterations in original). The question is whether the labor law issues a plaintiff raises are collateral to independent claims being brought under ERISA. Determining whether *Garmon* applies due to an ERISA claim's dependence on labor law requires asking if it is necessary to prove

violations of the NLRA to establish the ERISA claim. *See id.* at 610–11 (discussing the impact of *Garmon* preemption on RICO claims).

> ii.     *The Applicability of* Garmon

The Fringe Funds argue that the *Garmon* doctrine applies, because Rieth-Riley is asserting a claim that requires finding that the Fringe Funds violated the NLRA. Although Rieth-Riley alleges a breach of fiduciary duty under ERISA, the Fringe Funds contend that this claim is "fundamentally rooted in an alleged violation of the NLRA, specifically the purported breach of the obligation to maintain the status quo during collective bargaining negotiations." (ECF No. 23, PageID.765.)

That status quo obligation, the Fringe Funds argue, arises from Section 8(a)(5) and 8(d) of the NLRA. *Id.* Section 8(a)(5) prohibits refusals to bargain collectively with employees' representatives as an unfair labor practice, and Section 8(d) discusses the obligation to bargain in good faith. 29 U.S.C. § 158. As the Sixth Circuit has explained, the NLRA requires unions and employers to maintain the status quo "and honor the terms and conditions of an expired collective bargaining agreement as they negotiate a new one." *Rieth-Riley I*, 43 F.4th at 619 (citation modified). Failure to abide by this requirement constitutes an "unfair

17

labor practice" under the NLRA, a legal violation over which the NLRB has "'primary,' and often 'exclusive,' jurisdiction." *Id.*

The Supreme Court has applied the *Garmon* doctrine in cases involving ERISA claims. *Advanced Lightweight* involved the question of "whether an employer's unilateral decision to discontinue contributions to a pension plan constitutes a violation of the statutory duty to bargain in good faith." *Laborers Health & Welfare Tr. Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 552 (1988). In that case, plan trustees attempted to collect contributions from an employer, alleging "that respondent's unilateral decision to change the terms and conditions of employment by discontinuing its contributions constituted a breach of its duty to bargain in good faith and violated § 8(a)(5) of the NLRA." *Id.* at 542–43. The Supreme Court held that such a claim fell under the NLRB's jurisdiction and that ERISA's statutory provision for suing employers who are delinquent in making their required contributions "does not confer jurisdiction on district courts to determine whether an employer's unilateral decision to refuse to make postcontract contributions constitutes a violation of the NLRA." *Id.* at 549. The Supreme Court instructed that district courts' resolution of labor law

18

questions should be "the exception rather than the rule" and when cases "involve either an actual or an 'arguable' violation of § 8 of the NLRA, federal courts typically defer to the judgment of the NLRB." *Id.* at 552. The Fringe Funds' contention is that "[d]espite framing the issue in the context of a breach of fiduciary duty under ERISA, the gravamen of [Rieth-Riley]'s complaint is an alleged unfair labor practice within the jurisdiction of the NLRB." (ECF No. 23, PageID.765.) In *Advanced Lightweight*, the Supreme Court explained that while there are exceptions where courts may make findings related to labor law, that would not generally require adjudicating a claim that a defendant committed an unfair labor practice. See *Advanced Lightweight*, 484 U.S. at 552 n.19.

In *Rieth-Riley I*, the Sixth Circuit set forth how to determine whether a claim is an ERISA claim that belongs in federal district court or a claim that falls under the NLRB's jurisdiction:

> ERISA grants federal district courts jurisdiction to hear breach-of-contract claims, not unfair-labor-practice claims. The scope of this proposition is limited. It signifies only that a plaintiff cannot use ERISA to get around the well-accepted rule that an NLRA claim belongs in the NLRB. And in practice, it plays out as follows. If a plaintiff brings an ERISA claim for "promised [contractual] contributions," a federal

19

district court has jurisdiction to hear the suit. *Id.* Put another way, as long as a plaintiff's claim rests on good-faith assertions that independent, live agreements bind the employer, *Advanced Lightweight* does not enter the picture.

*Rieth-Riley I*, 43 F.4th at 622.

In *Rieth-Riley I*, the Fringe Funds were the plaintiffs. They alleged a claim against Rieth-Riley that they contended "had its roots in contract, not statute." *Id.* at 621. They asserted that "the parties implicitly had agreed to revive the expired CBA" and that, even if they had not done so, "independent agreements continued to bind the parties." *Id.* At the motion to dismiss stage, a plaintiff need only allege in good faith that the obligations they assert arise under an "independent, live" contractual agreement for a district court to be able to consider their claim on the merits—so long as they do not "ask a federal district court to find [a party] violated the NRLA." *Id.* at 622–23 ("As long as a plaintiff asserts an ERISA cause of action—and doesn't ask a federal district court to find an employer violated the NRLA—the court has jurisdiction to hear the case.")

The question, then, is whether Rieth-Riley is asking the Court to find that the Fringe Funds violated the NLRA. Rieth-Riley does make such a request to the Court—repeatedly and at crucial junctures in its

complaint. Rather than relying on "independent, live agreements," Rieth-Riley asserts a claim that explicitly *depends* upon finding that the Fringe Funds violated the NLRA. *Id.* at 622. Its explanation for why the Fringe Funds are obliged to accept its contributions runs directly through a disputed assertion about how the NLRA applies. Rieth-Riley is therefore incorrect that its claim falls under an exception to the *Garmon* doctrine where the labor law questions at issue are collateral to the claims they are bringing "under independent federal remedies." (ECF No. 25, PageID.795 (quoting *Connell Constr.*, 421 U.S. at 626).) The Sixth Circuit has explained that where a claim depends on determining that an unfair labor practice has occurred, the NLRA issues in a case are "anything but collateral" and *Garmon* applies. *Trollinger*, 370 F.3d at 610–11 (discussing circumstances where *Garmon* would or would not apply to a RICO claim).

Rieth-Riley's claim depends upon and expressly incorporates an unfair-labor-practice claim under the NLRA. The complaint in Rieth-Riley's Lawsuit asks the Court to resolve labor law questions that trigger the *Garmon* doctrine. To be sure, Rieth-Riley also refers to "Agreements and Declarations of Trust establishing and governing each of the Fringe

Funds [that] empower and require the Trustees to accept contributions to which they are legally entitled, hold assets of each of the Fringe Funds in trust, and invest those assets for the benefit of the participants of the Fringe Funds." (ECF No. 1, PageID.14.) But it proceeds to assert that the Fringe Funds' legal entitlement to those contributions, as well as their legal obligation to accept those contributions, is grounded in the NLRA. When setting forth its breach of fiduciary duty claim, Rieth-Riley states: "The Trustees are required by the NLRA to continue accepting Rieth-Riley's contributions to the Fringe Funds for work covered under the status quo of the terms and conditions of the expired Road Agreement while Rieth-Riley and Local 324 continue to negotiate for a successor CBA." (ECF No. 1, PageID.17.)

At the hearing on the Motion to Dismiss, the following exchange between the Court and Rieth-Riley's counsel occurred:

> THE COURT: . . . [W]hat is the independent live contract that creates the current obligation for the funds to accept your contributions?
>
> [RIETH-RILEY'S COUNSEL]: There isn't one, Your Honor.
>
> THE COURT: So there is no contract.
>
> [RIETH-RILEY'S COUNSEL]: That's correct.

THE COURT: So what is the source of their obligation to accept the funds?

[RIETH-RILEY'S COUNSEL]: The status quo obligation.

THE COURT: Under the NLRA.

[RIETH-RILEY'S COUNSEL]: That's correct. . . .

(ECF No. 36, PageID.954.) Rieth-Riley's counsel proceeded to further clarify that the foundation of Rieth-Riley's ERISA claim was its contention that the Fringe Funds have a duty under the NLRA. (*Id.* at PageID.954–955.)

The dependence of Rieth-Riley's claim on the NLRA is further revealed in Rieth-Riley's request for a declaratory judgment holding that

> the Trustees' fiduciary duties under ERISA require the Fringe Funds to continue accepting Rieth-Riley's contributions made on behalf of employees who are continuing to perform work under the status quo of the terms and conditions of the Road Agreement pursuant to Rieth-Riley's *and the Fringe Funds' statutory obligations to maintain the status quo of the terms and conditions of the expired Road Agreement*[.]

(ECF No. 1, PageID.19 (emphasis added).) Rieth-Riley's request for injunctive relief also refers to statutory obligations under the NLRA. (*Id.* at PageID.19–20 (requesting injunctive relief "for as long as Rieth-Riley *and the Fringe Funds* have the statutory obligation to maintain the

23

status quo of the terms and conditions of the expired Road Agreement"
(emphasis added)).) It repeats the same claim about the Fringe Funds'
statutory obligations under the NLRA elsewhere in the complaint. (*Id.* at
PageID.13 ("The Fringe Funds continue to be bound by their statutory
status quo obligations under the NLRA to accept Rieth-Riley's
contributions to the Fringe Funds on behalf of work performed by its
employees that is covered under the status quo of the Road Agreement.");
*see also, e.g.*, *id.* at PageID.2, 11.) While Rieth-Riley refers to various
trust documents, it repeatedly asserts that granting the relief it requests
requires the Court to find that the Fringe Funds violated the NLRA. The
Sixth Circuit has made clear that requests for such a finding must be
brought before the NLRB rather than a federal district court. *Rieth-Riley
I*, 43 F.4th at 622–23.  ("As long as a plaintiff asserts an ERISA cause of
action—*and doesn't ask a federal district court to find an employer
violated the NRLA*—the court has jurisdiction to hear the case."
(emphasis added)). Because Rieth-Riley's claim and its request for relief
asks the Court to find a violation of the NLRA, the *Garmon* doctrine
applies.

24

The policy goals that animate the *Garmon* doctrine also require the Court to refrain from exercising jurisdiction here. The Supreme Court has explained that one "primary" purpose of this doctrine is "leaving the development of [labor relations law] to the administrative agency created by Congress for that purpose." *Vaca*, 386 U.S. at 181. Rieth-Riley has noted the unique fact pattern at issue here. (ECF No. 36, PageID.972.) Determining to whom status quo obligations established by the NLRA apply and what such obligations require—particularly in the unique and contentious circumstances in this case—is a question that falls within the statutory purpose of the NLRB. *See* 29 U.S.C. §151 (stating that part of the purpose of the NLRA is "removing certain recognized sources of industrial strife and unrest[] [and] encouraging practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions" and encouraging collective bargaining "for the purpose of negotiating the terms and conditions of [] employment").

### iii.    *Further Arguments Against Applying* Garmon

Despite Rieth-Riley's repeated assertions that the Fringe Funds have violated the NLRA and its request that the Court grant

corresponding relief, it nonetheless contends that its claims do not trigger the *Garmon* doctrine. It argues that the *Garmon* doctrine does not apply when there is a potential conflict between the NLRA and another federal law. Further, it insists that its claims are not arguably subject to the NLRA, and that the NLRB lacks an interest in deciding the labor law issues raised here. Despite the apparent tension with Rieth-Riley's claim that the NLRB lacks such an interest, it also contends that the NLRB and this Court have in fact already decided the relevant labor law issues. Additionally, Rieth-Riley argues that the Fringe Funds are judicially estopped from arguing for the application of *Garmon* in this litigation. None of these arguments succeed.

### a.   Garmon *Preemption and Federal Law*

Rieth-Riley asserts that "*Garmon* preemption is inapplicable to federal law." (ECF No. 35, PageID.917.) It argues that the *Garmon* doctrine is intended to address conflicts between state and federal law and therefore does not deprive the Court of jurisdiction to hear the Rieth-Riley lawsuit, which involves two federal statutes, ERISA and the NLRA. (*Id.* at PageID.917–918.) Rieth-Riley is incorrect.

*Garmon* indeed involved federal-state relations. *Garmon*, 359 U.S. at 241, 244–45 ("[T]o allow the States to control conduct which is the subject of national regulation would create potential frustration of national purposes"). Even in that case, however, the Supreme Court stated that "[w]hen an activity is arguably subject to [Section] 7 or [Section] 8 of the Act, the States *as well as the federal courts* must defer to the exclusive competence of the National Labor Relations Board." *Id.* at 245 (emphasis added). The *Garmon* court held that Congress determined that "centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules." *Id.* at 242–43. And in *Advanced Lightweight*, the Supreme Court applied *Garmon* when considering a federal-law claim under ERISA related to "whether an employer's unilateral decision to discontinue contributions to a pension plan constitutes a violation of the statutory duty to bargain in good faith." *Advanced Lightweight*, 484 U.S. at 552; *see also Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004) ("*Garmon* and its successors are principally about the relation between state and federal policy, but the doctrine applies even in federal-question cases that include issues within the Labor Board's charge." (citing *Advanced*

27

*Lightweight*, 484 U.S. at 552)). Rieth-Riley is therefore incorrect that the *Garmon* doctrine only applies to conflicts between state and federal law. Nor do the cases it cites to the contrary establish that proposition. *See, e.g.*, *Lupiani v. Wal-Mart Stores, Inc.*, 435 F.3d 842, 846 (8th Cir. 2006) (a case that does not address *Advanced Lightweight* and did "not decide whether the *Garmon* preemption doctrine is implicated because ERISA and the [National Labor Relations] Act [were] not in conflict" in that case); *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 755, 757 n.8 (9th Cir. 1997) (holding that "*Garmon* preemption originates from the Supremacy Clause of the United States Constitution, and that this provision is only implicated when a case involves a conflict between a federal and a state law" but acknowledging that "*Garmon* will preempt a federal claim when that federal claim depends upon the NLRA to state the federal cause of action . . . . [specifically when] the non-NLRA federal claim depended entirely on a threshold determination that a violation of the NLRA had occurred").

### b.   *"Arguably Subject" to the NLRA*

Rieth-Riley also argues that its claims against the Fringe Funds are not arguably subject to the NLRA. It asserts that it is not possible to

levy unfair labor practice charges under the NLRA against the Fringe Funds and that the NLRB lacks any interest in the issues in this case. (ECF No. 35, PageID.919.)

As an initial matter, this argument is in conflict with the position Rieth-Riley's counsel took during oral argument:

> THE COURT: [] I wanted to ask you . . . do you agree that [the Fringe Funds'] conduct in rejecting the contributions is arguably prohibited or prohibited by the NLRA?
>
> [RIETH-RILEY'S COUNSEL]: Yes.

(ECF No. 36, PageID.961.)

Putting that tension to the side, Rieth-Riley asserts that only an employer, a union, or a union's agents can commit an unfair labor practice and the Fringe Funds do not fall within any of those categories. With respect to the claims in this case, the Fringe Funds are neither an employer nor a union. Rieth-Riley states that "the NLRB has previously held that the Fringe Funds are not agents of the Local 324 Union." (ECF No. 35, PageID.919.) But the NLRB opinion upon which Rieth-Riley relies addresses fund trustees' conduct in three fund meetings that took place years before the conduct in Rieth-Riley's Lawsuit and finds that these trustees did not act as agents of the union *at that time*. *Rieth-Riley*

*Constr. Co.*, 374 NLRB No. 13, slip op. at *29 n.61 (Dec. 16, 2024). That ruling about fund trustees does not address whether the Fringe Funds' conduct here could count as an unfair labor practice under the NLRA. In fact, Rieth-Riley has also alleged that trustees of the Defendant Fringe Funds are acting to further union interests in rejecting its contributions, suggesting a potential agency relationship. (ECF No. 35, PageID.921 n.2; ECF No. 38, PageID.1018.) Rieth-Riley has therefore failed to show that the relevant conduct is not arguably subject to the NLRA.

More generally, Rieth-Riley argues that the NLRB lacks an interest in deciding this dispute under federal labor law. (ECF No. 35, PageID.919.) But the Supreme Court has explained that even when a party cannot invoke the NLRB's jurisdiction, it may nonetheless sometimes be appropriate to apply the *Garmon* doctrine. *See Sears*, 436 U.S. at 203 (explaining that Congress may sometimes "prefer[] the costs inherent in a jurisdictional hiatus to the frustration of national labor policy which might accompany the exercise of state jurisdiction"); *see also Smith*, 125 F.3d at 754 ("Preemption under *Garmon* does not require that a plaintiff have a certain remedy before the NLRB, or even that the NLRB will hear the claim in the first place."). The question the Court

30

must answer is whether an activity is "arguably subject" to the NLRA. *Garmon*, 359 U.S. at 245. When it is unclear whether the NLRA covers activity, courts defer to the NLRB to make that determination. *Serrano v. Jones & Laughlin Steel Co.*, 790 F.2d 1279, 1284 (6th Cir. 1986) (citing *Garmon*, 359 U.S. at 244). As Rieth-Riley conceded during oral argument, it alleges that the Fringe Funds engaged in conduct that is arguably subject to the NLRA. Rieth-Riley's arguments that the NLRB lacks an interest in the claims it alleges here fails to establish that *Garmon* does not apply.

### c.  *Previous Court and Administrative Rulings*

Rieth-Riley also argues that this Court has subject matter jurisdiction over this case, because previous rulings establish that the Fringe Funds have a status quo relationship with Rieth-Riley. (ECF No. 35, PageID.920–921.) It claims that the NLRB and this Court have already recognized a status quo relationship between Rieth-Riley and the Funds that exists pursuant to the NLRA, and therefore the Court should not apply *Garmon* to avoid encroaching on the NLRB's jurisdiction. (*Id.*) This argument fails.

31

Rieth-Riley asserts that an NLRB ruling establishes that it must contribute to the Fringe Funds pursuant to its status quo obligations. (ECF No. 35, PageID.920.) But the question here involves *the Fringe Funds'* statutory obligations to accept contributions under the NLRA, which the NLRB did not address. (ECF No. 1, PageID.13.) The Fringe Funds reject the contention that any status quo obligation under the NLRA applies *to them*, as opposed to that such obligations apply to Rieth-Riley. (*See, e.*g, ECF No. 36, PageID.959–960; ECF No. 37, PageID.1001.) They insisted as much in a letter sent to Rieth-Riley, which Rieth-Riley attached to its complaint. (ECF No. 1-8, PageID.85 ("[I]t is Rieth-Riley's obligation (not the Funds') to maintain the status quo under the NLRA.").)

Rieth-Riley also argues that prior litigation in federal court has already established "the parties' status quo obligations." (ECF No. 35, PageID.921.) Earlier litigation in which the Fringe Funds sued Rieth-Riley involved a review of how the Fringe Funds, Rieth-Riley, and Local 324 understood their obligations to one another, as well as how that shaped the Fringe Funds' willingness to accept Rieth-Riley's contributions. Much of it revolved around the Fringe Funds' decision to

32

accept contributions from Rieth-Riley after it was discovered that Local 324 and Rieth-Riley had a relationship "governed by Section 9(a) of the NLRA, rather than by Section 8(f), meaning that they had a statutory obligation to maintain the status quo."[6] (ECF No. 1, PageID.9–10.)

At summary judgment in that litigation, the question was whether "any contract existed beyond the stated durational terms of the CBA or [whether] the parties mutually agreed to be bound by the expired CBA." *Operating Eng'rs Local 324 Fringe Benefit Funds v. Rieth-Riley Construction Co., Inc.*, 681 F. Supp. 3d 746, 760 (E.D. Mich. 2023) ("*Rieth-Riley Summary Judgment*") *aff'd Rieth-Riley II*, No. 23-1699, 2024 WL 2852006, (6th Cir. June 5, 2024). In considering that question, the district court considered whether the Fringe Funds' conduct demonstrated a desire to continue under the expired CBA. *Id.* at 761.

As a result, the district court's opinion granting summary judgment included discussion of how Rieth-Riley and the Fringe Funds'

---

[6] During oral argument, the Fringe Funds argued that they did not accept Rieth-Riley's contributions when they believed Rieth-Riley's relationship to Local 324 fell under Section 8(f), because they thought that prohibited them from accepting the contributions. (ECF No. 36, PageID.952–953.) They further asserted that when they began accepting Rieth-Riley's contributions following the discovery of the 9(a) relationship, it was because they thought that relationship permitted but did not require acceptance of those contributions. (*Id.* at PageID.953.)

understanding of their obligations under the NLRA shaped their interactions. *Id.* at 754–55. The Sixth Circuit also referenced this background in the earlier litigation between the Fringe Funds and Rieth-Riley. It explained how the litigants treated their obligations "[i]n practice" after the litigants determined they had a § 9(a) relationship under the NLRA, but it did not make any determination about the applicability of the NLRA to the Fringe Funds. *Rieth-Riley I*, 43 F.4th at 620. The Sixth Circuit also did not rule on this issue when deciding the appeal related to summary judgment. In affirming summary judgment in that case, the Sixth Circuit stated that

> [w]hen a collective-bargaining agreement expires, § 9(a) obligates the parties to maintain the status quo—including continuing fund contributions—and to bargain in good faith. 29 U.S.C. §§ 158(a)(5), (d); 159(a). Here, after the parties realized their mistake, the Funds began accepting Rieth-Riley's post-expiration contributions, and Local 324 and Rieth-Riley began to bargain in good faith. (They have not signed a new collective-bargaining agreement.)

*Rieth-Riley II*, 2024 WL 2852006, at *1. "Parties," as discussed here, appears to refer to the parties to a CBA, meaning Local 324 and Rieth-Riley. The Sixth Circuit did not draw any conclusions in *Rieth-Riley II*

34

about whether the Fringe Funds were subject to status quo obligations under the NLRA.

In two district court rulings from the previous litigation between Rieth-Riley and the Fringe Funds, there are indeed statements about statutory obligations under the NLRA applying to the Fringe Funds, however. *Operating Eng'rs Local 324 Fringe Benefit Funds v. Rieth-Riley Construction Co., Inc.*, 571 F. Supp. 3d 675, 681, 684–685 (E.D. Mich. 2021) ("*Rieth-Riley Motion to Dismiss*"), *rev'd Rieth-Riley I*, 43 F.4th 617 (6th Cir. 2022); *Rieth-Riley Summary Judgment*, 681 F. Supp. 3d at 754, 761. But these statements do not permit the Court to decide issues over which it would otherwise lack jurisdiction.

These statements do not bind the Court, nor do they undermine the analysis set forth above regarding the *Garmon* doctrine. The district court's statements in these two opinions appear to rely on comments the Fringe Funds' counsel made during a 2018 oral argument in separate litigation in which the Fringe Funds were involved. (Case No. 20-cv-10323, ECF No. 76-10, PageID.2612.) And in the district court's summary judgment ruling, which the Sixth Circuit affirmed, the statements about status quo obligations are not necessary to the holding, which was that

there was not mutual assent to continue under the expired CBA. Further, as set forth above, the Sixth Circuit has not decided whether the Fringe Funds have status quo obligations under the NLRA.

What the Sixth Circuit has decided is that "[a]s long as a plaintiff asserts an ERISA cause of action—and doesn't ask a federal district court to find an employer violated the NRLA—the court has jurisdiction to hear the case." *Rieth-Riley I*, 43 F.4th at 622–23. The Court is bound by that Sixth Circuit ruling and, as set forth above, the Court cannot decide Rieth-Riley's lawsuit without violating it. Dicta from the district court in previous litigation do not provide a basis for this Court to ignore the Sixth Circuit's holding and to decide issues over which the Court lacks jurisdiction.[7] Accordingly, this argument for subject matter jurisdiction based on prior rulings fails.

---

[7] The Court also notes that "parties may neither consent nor stipulate to a court's subject matter jurisdiction where it does not exist." *Blaszczyk v. Darby*, 425 F. Supp. 3d 841, 845 (E.D. Mich. 2019). The dicta cited by Rieth-Riley is based on now-disavowed statements from past litigation. Such statements cannot provide the basis for the Court's jurisdiction where—as the Court has set forth here—that jurisdiction does not otherwise exist.

### d.   Judicial Estoppel

Rieth-Riley argues that the Fringe Funds are also judicially estopped from arguing that the Court should apply *Garmon*. (ECF No. 25, PageID.798–800.) Judicial estoppel prevents "a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). At a minimum, "a party's later position must be 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting cases). Judicial estoppel "should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contrary position without examining the truth of either statement.'" *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004) (quoting *Teledyne Indus., Inc*, 911 F.2d at 1218)).

Rieth-Riley's argument is essentially that in earlier litigation the Fringe Funds argued their claims were not preempted by *Garmon* "because they had pled the claim under ERISA and alleged a basis for

37

doing so (there, that the contribution obligation at issue was contractual, not statutory, as required for a viable claim under ERISA [])." (ECF No. 25, PageID.799.) After the Fringe Funds prevailed on this issue in the Sixth Circuit in previous litigation, Rieth-Riley asserts that the Fringe Funds now "take the position that Garmon preempts Rieth-Riley's breach of fiduciary duty claim, which Rieth-Riley has pled under ERISA and supported with allegations adequate to give rise to a legitimate claim under ERISA." (*Id.*)

But the Fringe Funds are not asserting a position contrary to the one they asserted in earlier litigation. In the earlier litigation, the Fringe Funds attempted to enforce what they claimed was a live contract, so they argued that the *Garmon* doctrine did not apply. *Rieth-Riley I*, 43 F.4th at 621. The Fringe Funds' argument here is that Rieth-Riley is *not* trying to enforce a live contract but instead that Rieth-Riley's claim is grounded on statutory obligations. (ECF No. 26, PageID.827; ECF No. 37, PageID.1000–1001.) Indeed, the Fringe Funds assert that Rieth-Riley is making claims that differ from the claims the Fringe Funds made in earlier litigation. As a result, the Fringe Funds contend that Rieth-Riley's claims should be treated differently than their claims were at this stage

38

and *Garmon* preemption should apply. The Fringe Funds are not asserting a contrary position here, so judicial estoppel does not apply.

## C.    Conclusion

For all the reasons set forth above, Rieth-Riley's arguments against applying the *Garmon* doctrine fail. Accordingly, because its claims are "arguably subject" to the NLRA, the Court must defer to the NLRB and dismiss Rieth-Riley's Lawsuit due to lack of subject matter jurisdiction. *See Garmon*, 359 U.S. at 245.

## III.   Motion to Amend Rieth Riley's Lawsuit

Rieth-Riley also seeks to file an amended complaint. (ECF No. 38.) That motion is now fully briefed. (ECF Nos. 40, 41.)

## A.    Legal Standard

A party seeking to amend its complaint, when such an amendment would not be permitted as a matter of course, "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave should be denied where the amendment demonstrates defects such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Brown v. Chapman*, 814 F.3d 436, 443 (6th Cir. 2016) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (quoting *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017)). "To deny a motion to amend, a court must find 'at least some significant showing of prejudice to the opponent.'" *Ziegler v. Aukerman*, 512 F.3d 777, 786 (6th Cir. 2008) (quoting *Moore v. City of Paducah,* 790 F.2d 557, 562 (6th Cir. 1986)).

## B.    Analysis

Rieth-Riley seeks leave of the Court to file an amended complaint. (ECF No. 38.) The Fringe Funds respond in opposition, arguing that the proposed amendment would be futile. (ECF No. 40.) They assert that there is a lack of subject matter jurisdiction under the *Garmon* doctrine, that Rieth-Riley lacks standing under ERISA, and that the proposed amended complaint fails to establish a claim that would survive a motion to dismiss. (*Id.* at PageID.1701–1703.)

The Fringe Funds respond that the claims asserted in the proposed amended complaint are preempted under the *Garmon* doctrine, which would mean Rieth-Riley's claim is in the exclusive jurisdiction of the NLRB. (ECF No. 40, PageID.1711–1713.) Rieth-Riley and the Fringe Funds agree that the Court's decision on the Fringe Funds' Motion to Dismiss will apply equally to Rieth-Riley's Motion for Leave to File Amended Complaint. (*Id.*; ECF No. 41, PageID.1728.) The Court set forth the reasons for granting the Fringe Funds' Motion to Dismiss based on the *Garmon* doctrine above. Like the original complaint, in the proposed First Amended Complaint, Rieth-Riley asks the Court to find that the Fringe Funds are violating their obligations under the NLRA in a manner that is fundamental to Rieth-Riley's claim and to its request for relief. (*See, e.g.*, ECF No. 38-1, PageID.1026–1027, 1049–1052.) The Court therefore agrees with Rieth-Riley and the Fringe Funds that the same reasoning that supports granting the Fringe Funds' Motion to Dismiss applies with equal force to Rieth-Riley's request to file an amended complaint.

### C.   Conclusion

Accordingly, because the proposed amended complaint would be futile, Rieth-Riley's motion for leave to file an amended complaint is denied. (ECF No. 38.)

## IV.   The Employees' Lawsuit

The Fringe Funds also seek to dismiss the first amended complaint in the Employees' Lawsuit. (ECF No. 46.) That motion is fully briefed. (ECF Nos. 47, 49.) The Employees also filed a motion for a preliminary injunction, which is fully briefed. (ECF Nos. 48, 50.)

### A.   Motion to Dismiss the Employees' Lawsuit

The Fringe Funds argue that the Employees' Lawsuit should be dismissed based on several grounds, including the *Garmon* doctrine. (ECF No. 46, PageID.1763–1766.) In addition to re-asserting many of the arguments the Fringe Funds made for dismissing Rieth-Riley's lawsuit pursuant to the *Garmon* doctrine, they argue that the Employees also arguably allege an additional unfair labor practice under the NLRA when they allege union influence over and coordination with the Trustees. (*Id.* at PageID.1765–1766.)

The Employees' Lawsuit has the same features that led the Court to dismiss Rieth-Riley's lawsuit under the *Garmon* doctrine. It alleges violations of the Fringe Funds' status quo obligations under the NLRA, including in the Employees' requested relief. (*See, e.g.*, Case No. 25-cv-10749, ECF No. 44, PageID.809, 811, 814, 817–818, 823, 825–826.) The Employees' response to the Fringe Funds' arguments based on the *Garmon* doctrine largely mirror Rieth-Riley's arguments about that issue. The Court rejected those arguments above.

The Employees add a further argument, however, asserting that ERISA's preemptive effects means that "it makes no sense to interpret *Garmon* as requiring the NLRA to preempt ERISA" on the claim the Employees assert. (ECF No. 49-1, PageID.2012.) This argument relies on ERISA's complete preemption of state-law causes of action, meaning that even if a claim is pled under state law but falls "within the scope" of ERISA's civil enforcement provisions, it is converted into a federal claim and is removeable to federal court. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (internal quotation marks omitted). It is true that ERISA makes "employee benefit plan regulation . . . exclusively a federal concern." *Id.* at 208 (internal quotation marks omitted). That is why

43

federal courts apply such broad preemption with respect to state-law claims that relate to employee-benefit plans covered by ERISA. *Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006).

But complete preemption under ERISA focuses on state-law claims and guaranteeing that ERISA enforcement remains a "federal concern." It does not address which federal entity—federal courts or the NLRB—should decide ERISA claims where elements of the claims fundamentally and expressly depend on finding violations of the NLRA. Notably, when the Sixth Circuit considered the relationship between ERISA and the NLRA, it did not adopt the rule the Employees propose, namely ignoring the *Garmon* doctrine. Instead, the Sixth Circuit held that whether a district court has jurisdiction over a claim depends on whether the plaintiff asserts that the source of the relevant duties is an "independent, live agreement[]" and whether they ask the district court to find an NLRA violation. *Rieth-Riley I*, 43 F.4th at 620, 622–23. There is no basis to adopt the rule proposed by the Employees that the *Garmon* doctrine can never come into play when ERISA is at issue. This therefore does not provide a reason to depart from the analysis set forth above with respect to the motion to dismiss Rieth-Riley's Lawsuit. Because the *Garmon*

44

doctrine also applies with respect to the Employees' Lawsuit, the Court

must dismiss it due to lack of jurisdiction.[8]

## B.    The Employees' Motion for a Preliminary Injunction

The Employees also seek a preliminary injunction. (ECF No. 48.)

When considering a preliminary injunction a court must look at

four factors:

> (1) whether the movant has a strong likelihood of success on
> the merits;
>
> (2) whether the movant would suffer irreparable injury
> without the injunction;

---

[8] The Employees were permitted to file a sur-reply in opposition to the motion to dismiss their lawsuit. (ECF No. 49-2.) The sur-reply discusses certain NLRB rulings but fails to establish that the *Garmon* doctrine does not apply with respect to their claims. In the sur-reply, the Employees offer a strained interpretation of the language in one NLRB ruling that discusses Rieth-Riley's status quo obligations. (*Id.* at PageID.2030–2031.) In addition, they dispute the Fringe Funds' contention that their complaint suggests the Fringe Funds are acting as agents of Local 324. (*Id.* at PageID.2033–2034.) In this Opinion, the Court has already addressed some of the arguments the Employees present. Beyond that, the Employees allege in their complaint that "the decision of [Trustee] Mr. Stockwell and the other Trustees of the Fringe Funds to refuse Rieth-Riley's continued contributions on behalf of Plaintiffs, when they have a legal obligation to accept them, was influenced by, or intended to further, the interests of Local 324." (Case No. 25-cv-10749, ECF No. 44, PageID.820.) Their arguments do not undermine the conclusion that the conduct they allege violates status quo obligations is arguably subject to the NLRA. Additionally, the Court's determinations in this Opinion do not rely on the referenced NLRB rulings. The arguments in the sur-reply do not provide a reason to disturb the Court's determination that the Employees' Lawsuit must be dismissed.

45

(3) whether issuance of the injunction would cause substantial harm to others;

and (4) whether the public interest would be served by the issuance of the injunction.

*Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763 (6th Cir. 2019) (citation modified). Further,

> [t]hese factors are not prerequisites, but are factors that are to be balanced against each other. *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.,* 163 F.3d 341, 347 (6th Cir.1998) (citation omitted). A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary,* 228 F.3d at 739 (citations omitted).

*Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). The first factor is "the most important one . . . . [and] [i]f a movant is highly unlikely to succeed on the merits, there is little reason for a court to take the drastic step of enjoining the opposing party at the onset of a suit." *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 404 (6th Cir. 2024) (citation modified).

As set forth above, the Employees are unlikely to succeed on their claims, because the Court lacks subject matter jurisdiction over those claims. The motion for a preliminary injunction further reinforces the

46

Court's conclusions about the applicability of the *Garmon* doctrine. (*See, e.g.*, ECF No. 48-1, PageID.1870 ("Rieth-Riley and the Fringe Funds are obligated by Section 8(a)(5) of the National Labor Relations Act to maintain the status quo of the terms and conditions of Rieth-Riley's expired collective bargaining agreement with Operating Engineers' Local 324.").)[9]

With respect to the other factors, the Employees argue that their loss of benefits constitutes irreparable harm, that granting the injunction

---

[9] The Court notes that in the Employees' reply in support of their motion for a preliminary injunction, they cite a readily distinguishable Seventh Circuit case to argue that status quo obligations under the NLRA apply to benefit funds. (ECF No. 48-5, PageID.1919.) In that case, the Seventh Circuit explained that it had jurisdiction over the dispute, because "the Funds here do not rely on any alleged statutory duty [the employer] might have to continue contributing during the post-contract status quo period. Instead, the Funds claim only that [the employer] has violated a contractual duty stemming from the participation agreements." *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 745 (7th Cir. 2007). In that case, "[t]he only quarrel revolve[d] around the meaning of the participation agreements" not the applicability of any obligations under the NLRA. *Id.* at 748. By contrast, in this litigation, the Employees rely on statutory duties under the NLRA as the basis for their claims. In addition, in the Seventh Circuit case, the operative contracts expressly addressed how contributions would work during the "status quo period" where a CBA was being negotiated. *Id.* at 743. The Employees do not cite any similar language from any binding contracts that establish ongoing obligations during "status quo periods." Instead, the Employees point to the NLRA. The Seventh Circuit considered the contractual obligations that applied to the parties in that case—not the statutory obligations under the NLRA that the Employees ask the Court to consider here. The former is consistent with the *Garmon* doctrine while, as set forth above, the latter is not.

47

will not harm the Fringe Funds, and that enforcing the rights and benefits ERISA affords is in the public interest. (ECF No. 48-1, PageID.1900–1902.) The Fringe Funds argue that the Court should reject the Employees' arguments with respect to the second, third, and fourth factors. (ECF No. 50-1, PageID.2051–2052.) Even if the Court accepted the Employees' arguments regarding the second, third, and fourth factors, that would not be enough to overcome the Court's finding there is no likelihood of success due to lack of jurisdiction. *See Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020) ("[A] court must not issue a preliminary injunction where the movant presents no likelihood of merits success." (citation modified)). Accordingly, the Employees' motion for a preliminary injunction is denied.

## V.    Conclusion

For the reasons set forth above, the Court GRANTS the Motion to Dismiss Rieth-Riley's Lawsuit, (ECF No. 23), DENIES the Motion to Amend Rieth-Riley's Lawsuit, (ECF No. 38), GRANTS the Motion to Dismiss the Employees' Lawsuit, (ECF No. 46), and DENIES the Employees' Motion for a Preliminary Injunction. (ECF No. 48.)

Accordingly, Rieth-Riley's Lawsuit and the Employees' Lawsuit, the two cases consolidated on the docket for Case No. 24-cv-13124, are both DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: August 8, 2025          s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 8, 2025.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager

49